DECISION
Before this Court are the cross-motions for summary judgment of Defendant Barrington School Committee (the "Committee")[1] and Plaintiffs Phoenix-Times Publishing Company d/b/a East Bay Newspapers, Josh Bickford ("Mr. Bickford"), Rhode Island Affiliate, American Civil Liberties Union, Inc. ("RIACLU") and Steven Brown *Page 2 
("Mr. Brown") (collectively "Plaintiffs"). This action arises from Plaintiffs' classification of certain Committee actions as non-compliant with the requirements of Rhode Island's Open Meetings Act, G.L. 1956 §§ 42-46-1 et seq. (the "OMA"). For the reasons set forth below, this Court grants the Committee's motion for summary judgment as to Count I of the Amended Complaint and denies Plaintiffs' cross-motion as to the same. Plaintiffs' motion for summary judgment as to Counts II and III is granted on the issue of statutory compliance only. Accordingly, the Committee's motion is denied as to the same. Jurisdiction is pursuant to G.L. 1956 § 42-46-8.
 I Facts and Travel
In 2008, public concern emerged regarding the growing problem of underage drinking in the Town of Barrington, Rhode Island. In response, the Chief of the Barrington Police Department publicly advocated the institution of mandatory Breathalyzer testing for all students attending school dances and events.[2] (Joint Statement of Facts (hereinafter, "Joint Statement") ¶ 5.) The Chief's proposal was embodied in a newspaper article published in The ProvidenceJournal on December 26, 2008. Id. at Ex. A: Article dated 12/28/08. On that same date, Mr. Brown, in his capacity as the Executive Director of the RIACLU, sent a letter to the Principal of the Barrington High School concerning the proposed Breathalyzer policy discussed in the newspaper article (the "Letter"). (Joint Statement Ex. B: Letter; see also Affidavit of Mr. Brown ("Brown Aff.") at ¶ 3, attached as Ex. A to Pls. Suppl. Statement of Facts.) Mr. *Page 3 
Brown also sent a copy of the Letter to the Committee, and subsequently composed a Press Release regarding the same topic. (Brown Aff. ¶¶ 3-4; see also Brown Aff. Ex. 1: RIACLU Press Release dated 1/9/09.) The RIACLU's opposition to the proposed policy received further coverage in The Providence Journal in an article dated January 10, 2009, and additional attention from the local press by means of an article published in the The BarringtonTimes on January 14, 2009, authored by Plaintiff Josh Bickford.[3] (Joint Statement Ex. C: Article dated 1/10/09 and Ex. D: Article dated 1/14/09.) The Parties agree that members of the public expressed opinions publicly both in favor of and in opposition to mandatory Breathalyzer testing throughout the months of December 2008 and January 2009. (Joint Statement ¶ 10.)
It is not disputed that the Committee was aware of opinions circulating publicly regarding the proposed policy. During the Committee's January 29, 2009 meeting, Committee Member Oberg specifically suggested that the Committee include "Public Comment Regarding Breathalyzer Testing at the High School" as a future agenda topic to "aid the Committee in a broader based decision regarding [the] issue." (Joint Statement Ex. F: Meeting Minutes for 1/29/09.) Consequently, the Committee set down a public comment period on the Committee's meeting agenda for the February 26, 2009 meeting (the "February Agenda"). (Joint Statement Ex. G: February Agenda.) Specifically, the February Agenda read "Public Comment Re: Breathalyzer Testing" and additionally indicated a planned "Executive Session pursuant to Section 42-46-5(a)(1) and42-46-5(a)(2) for Personnel and Collective Bargaining and Litigation" (the "Executive Session"). The February Agenda provided no further description concerning the subject matter of the Executive Session. *Page 4 
The official February 26, 2009 meeting Minutes (the "February Minutes") indicate that a "lengthy discussion" took place regarding mandatory Breathalyzer testing at high school dances, and that much input was provided by audience members. (Joint Statement Ex. H: February Minutes.) Specifically, the February Minutes stated
 "there is no formal proposal at this time and that [the Committee] want[s] to give all due consideration in order to properly handle this issue. . . . More discussion will take place before any decision is made regarding this issue. . . .[M]embers of the audience [are urged] to contact the School Committee or administration with their views." Id. at p. 2.
At the conclusion of the meeting, the Committee unanimously voted to adjourn the regular meeting and to go into Executive Session pursuant to §§ 42-46-5(a)(1) and 42-46-5(a)(2), specifically for "Personnel and Litigation." Id. at p. 5. At the time of adjournment, the Committee did not specify the litigation to be discussed in Executive Session. (Joint Statement ¶ 18.) The Committee subsequently voted to seal the Executive Session Minutes. (February Minutes at p. 5.)
Apart from personnel matters irrelevant to the instant dispute, the Committee maintains that it utilized the Executive Session to discuss an "assessment of the ACLU's threatened legal claims" provided in a draft memorandum prepared by the Committee's attorney, Dan Kinder ("Attorney Kinder"), at the request of the Committee. (Def's. Suppl. Statement of Facts ¶ 3.) The Committee avers that upon receiving a copy of the Letter in December 2008, Superintendent Robert McIntyre discussed the Letter with Defendant Hasenfus, Chairman of the Committee, and that both believed the Letter to constitute a "threat of litigation." (Affidavit of Robert O. McIntyre ("McIntyre Aff.") at ¶ 5.) Based upon this interpretation of the Letter, the Committee consequently sought legal advice from its counsel, and such legal advice was set forth in the draft *Page 5 
memorandum considered during the Executive Session. (McIntyre Aff. ¶¶ 5-6.) No votes were taken during the Executive Session. Id. at ¶ 9.
Following the February Meeting, Mr. Bickford sent correspondence to the Committee requesting "a copy of a letter sent to the school committee by its attorney, Dan Kinder, on the topic of a proposed breathalyzer policy considered for Barrington School events," as well as any additional correspondence between the Committee and its attorney regarding the topic. (Joint Statement Ex. J: Bickford Letter dated 2/27/09.) Mr. Bickford also sought a copy of the sealed Executive Session Minutes pursuant to the Rhode Island Access to Public Records Act ("APRA"). Seeid. Mr. Bickford questioned "whether the [Committee] properly convened in executive session under the Rhode Island Open Meetings Act" and indicated his intention to seek the opinion of the Rhode Island Attorney General's Open Government Unit. Id.
Specifically, Mr. Bickford was not convinced that the school department was faced with litigation or possible litigation concerning the Breathalyzer proposal allowing such a discussion on the topic to occur outside the reach of the public's ear.Id.
The Committee ultimately denied Mr. Bickford's request, maintaining that Attorney Kinder's memorandum, as well as any other correspondence between the Committee and its counsel, was privileged and otherwise exempt from public disclosure pursuant to G.L. 1956 §§ 38-2-2(4)(i)(E) and (S).[4] (Joint Statement Ex. K: McIntyre Letter dated March 5, 2009.) The Committee additionally declined to produce the Executive Session Minutes, contending that the session was lawfully closed in *Page 6 
accordance with § 42-46-5(a)(2), rendering the Minutes exempt from public disclosure pursuant to § 38-2-2(4)(i)(J). Id.
Subsequent to the Committee's denial, Mr. Bickford filed a complaint with the Rhode Island Attorney General ("Attorney General" or "AG")) pursuant to G.L. 1956 §§ 38-2-8(b)[5] and 42-46-8(a)[6] challenging the Committee's decision to convene the Executive Session and seal the resulting Minutes. (Joint Statement Ex. L: Complaint to Attorney General dated March 6, 2009.) Specifically, Mr. Bickford questioned whether the OMA's litigation exception encompassed "implicit" or "threatened" litigation, and doubted whether the Letter itself posed a threat of litigation. See id. After investigation, the Attorney General issued its Decision, designated OM 09-10/PR 09-13, on May 18, 2009 denying Mr. Bickford's request for relief. In reaching its decision, the Attorney General considered applicable documents, including a "substantive response" from Attorney Kinder, an affidavit from Superintendent McIntyre, a privilege log, and both the Open and Executive Session Minutes provided to the Attorney General for review. (Joint Statement Ex. M: AG Opinion OM09-10 at p. 2.) *Page 7 
In its decision, the Attorney General first opined that the language of § 42-46-5(a)(2) does not limit an executive session to discussion where litigation has been initiated, but instead is interpreted to include discussion of "reasonably anticipated," "imminent" and "threatened" litigation. Id. at p. 4. Indeed, such an interpretation has been proffered by the Attorney General in prior advisory opinions.[7] Id. at p. 4. The Attorney General also noted that in its opinion, an "express threat of litigation" is not a "condition precedent" to a public body properly convening an executive session. Id. at p. 5. Based on the "totality of the evidence," the Attorney General determined that the Executive Session discussion concerned the subject-matter of the Letter, and not a general policy discussion regarding the implementation of mandatory Breathalyzer testing. Id. Thus, the Attorney General concluded that the Executive Session was properly convened based on threatened litigation. Id.
With respect to the APRA complaint, the Attorney General determined that the Executive Session Minutes were exempted from public disclosure pursuant to § 38-2-2(4)(i)(J) since the session properly fell within the purview of § 42-46-5(a)(2) and the Minutes were sealed in accordance with §§ 42-46-4 and 42-46-5.Id. at p. 5. In regard to the requested correspondence between Attorney Kinder and the Committee, the Attorney General found such documents to be protected by the attorney-client privilege. Id. at 6. The Attorney General reasoned that the requisite elements for successful application of the privilege were met in the matter at hand. Id. *Page 8 
On June 18, 2009, a School Committee meeting took place during which the Committee was presented with draft protocol in regard to the use of Breathalyzers at student events. (Joint Statement Ex. W: Meeting Minutes 6/18/09.) The Committee voted to support the submitted Breathalyzer testing policy, contingent upon approval from legal counsel. Id. The updated protocol, which mandated "suspicionless testing" for all students attending certain school events, was formally approved at the August 4, 2009 meeting after further discussion amongst the Committee members, administrators and the audience. (Joint Statement Ex. Y: Meeting Minutes 8/4/09.)
Plaintiffs filed the instant matter on August 14, 2009, [8]
challenging the Committee's decision to convene the Executive Session. (Am. Compl. Count I.) Plaintiffs allege that while in Executive Session, the Committee improperly deliberated the proposed Breathalyzer testing policy, erroneously relying on the litigation exception provided under § 42-46-5(a)(2). Specifically, Plaintiffs claim that the RIACLU's letter did not threaten litigation, and moreover, that no policy had yet been adopted for the RIACLU to potentially challenge. Plaintiffs also maintain that the Committee failed to specify the nature of the business to be discussed during the Executive Session in the pertinent agenda, thus providing deficient public notice. (Am. Compl. Count II.) In Count III of the Amended Complaint, Plaintiffs contend that the Committee's published meeting agendas are "routinely" deficient in providing adequate notice to the public in accordance with the requirements of G.L. 1956 § 42-46-6. Lastly, Plaintiffs set forth Count IV alleging that the Committee violated the OMA by not effectuating the *Page 9 
publishing of certain meeting agendas on the Rhode Island Secretary of State's website; however, Count IV has since been dismissed by stipulation of the Parties.
On October 29, 2009, the Committee moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Rhode Island Superior Court Rules of Civil Procedure, or in alternative, for summary judgment pursuant to Rule 56. Plaintiffs filed an objection, as well as a motion for a reasonable opportunity to conduct discovery pursuant to Rule 56(f). This Court heard argument on the Committee's Motion to Dismiss, and ultimately denied the Committee's motion challenging Plaintiffs' standing to maintain the instant action. The Court proceeded to convert the remainder of the Committee's motion to one for summary judgment, stayed discovery, and directed the Parties to file a Joint Statement of Facts. Per the Court's Order, the Parties timely filed such a Joint Statement, as well as supplemental statements of proposed undisputed facts. The Committee re-filed its motion for summary judgment, to which the Plaintiffs filed opposition papers, as well as their own cross-motion for summary judgment. Supplemental reply memoranda by the Parties have also been presented to the Court. After additional oral argument, the Court now rules on the cross-motions for summary judgment submitted by the Committee and the Plaintiffs.
 II Standard of Review
On a summary judgment motion, this Court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. Chavers v. Fleet Bank (RI), N.A.,844 A.2d 666, 669 (R.I. 2004). On such a motion, the Court is to *Page 10 
determine only whether a factual issue exists. It is not permitted to resolve any such factual issues. The emphasis is on issue finding, not issue determination. O'Connor v. McKanna,116 R.I. 627, 633, 359 A.2d 350, 353 (1976); Palazzo v. Big GSupermarkets, Inc., 110 R.I. 242, 245, 292 A.2d 235, 237 (1972);Slefkin v. Tarkomian,103 R.I. 495, 496, 238 A.2d 742, 742 (1968). "Summary judgment is appropriate if it is apparent that no material issues of fact exist and the moving party is entitled to judgment as a matter of law."Chavers, 844 A.2d at 669. A party opposing a motion for summary judgment "`carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" Id. at 669-70 (quotingUnited Lending Corp. v. City of Providence,827 A.2d 626, 631 (R.I. 2003)). Cross motions simply require the Court to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. Curran v.Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citing Barnes v.Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (quoting Wightman v. Springfield Terminal Ry.,100 F.3d 228, 230 (1st Cir. 1996)).
 III Analysis
"It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy." Sec. 42-46-1. Such is the declared purpose for which the OMA was crafted to achieve. Accordingly, the Rhode Island Supreme Court has *Page 11 
required that the OMA be broadly construed and interpreted in the light most favorable to public access in order to effectuate this significant remedial and protective purpose. Tanner v. TownCouncil of Town of East Greenwich, 880 A.2d 784 (R.I. 2005) (citing Solas v. Emergency Hiring Council,774 A.2d 820, 824 (R.I. 2001)).
Here, this Court is presented with questions of statutory interpretation, as well as issues concerning the extent of the Committee's compliance with substantive and procedural requirements of the OMA. The analysis with which this Court is faced will be undertaken in the order of the individual Counts within Plaintiffs' Amended Complaint.
 A Propriety of the February 26, 2009 Executive Session
Count I of Plaintiffs' Amended Complaint alleges that the Committee convened the February 26, 2009 Executive Session in willful contravention of the express requirements and public policy set forth in the OMA. Plaintiffs contend that they are entitled to summary judgment on this Count because no genuine issues of material fact exist as to the Committee's alleged improper convening of the Executive Session. Specifically, Plaintiffs maintain that the plain meaning of the OMA language within § 42-46-5 governing closed meetings does not allow for discussion of "threatened" or "reasonably anticipated" litigation, but instead is limited to sessions "pertaining" to litigation.[9] Because it is undisputed that no active litigation on the part of the RIACLU had commenced regarding the proposed Breathalyzer policy, Plaintiffs aver that the *Page 12 
Committee had no authority to insulate the discussion from members of the public. In the alternative, Plaintiffs argue that even if this Court were to construe the pertinent language of the OMA to allow for the convening of an Executive Session to discuss "threatened" or "reasonably anticipated" litigation, the Letter could not reasonably have been construed as a threat of litigation when no policy had yet to be adopted. In opposition to Plaintiffs' arguments as to Count I, the Committee asserts that even if this Court were to determine the Executive Session to be improper, genuine issues of material fact exist as to the knowledge, intent and motivation of the individual Committee members in order to establish "willful" violations of the OMA.
As steadfastly as Plaintiffs aver that they are entitled to summary judgment on this Count, so too does the Committee contend here. In support of its own motion for summary judgment on Count I, the Committee maintains that Plaintiffs' claim fails as a matter of law in that the OMA exempts a public body's discussion of litigation or "threatened" litigation in order to facilitate the acquisition of legal advice in a closed forum. The Committee argues that § 42-46-5(a)(2) has long been construed by the Rhode Island Attorney General to include such "threatened" litigation, and that no authority exists to support a change in this established interpretation. The Committee further avers that whether or not the Letter objectively and reasonably constituted a "threat" of litigation is irrelevant because a determination of the reasonableness of a "threat" was within the province of the Committee. Lastly, the Committee classifies Plaintiffs' allegations as speculative, and argues that Plaintiffs have failed to offer a scintilla of evidence from which to infer that impermissible topics were indeed discussed during the Executive Session. *Page 13 
In opposing the Committee's motion, Plaintiffs argue that the Committee has presented no evidence indicating that the Letter indeed constituted a "threat" of litigation, and that any resulting discussion concerning the legality of the proposed Breathalyzer policy constituted a policy discussion ripe for public scrutiny. Plaintiffs further assert that whether litigation is "threatened" or "anticipated" does require an objective determination of the reasonableness of such a threat, contrary to the Committee's view. Plaintiffs urge this Court not to embrace the Committee's subjectivity argument for fear of enabling a slippery slope that will effectively erode the public's rights protected under the OMA. Thus, Plaintiffs suggest that genuine issues of material fact exist as to the reasonableness of the Committee's ascertainment of the Letter as threatening litigation.
 1 The Extent of the Litigation Exception
While the Committee argues that its proffered interpretation of the litigation exception is "well-settled" in Rhode Island, the Rhode Island Supreme Court has yet to address and demarcate the extent of the open meetings exemption for discussions "pertaining to" litigation as set forth in § 42-46-5(a)(2). The starting point for the Court's inquiry is the language of the OMA itself. The OMA permits a public body, by open call, to hold a meeting closed to the public upon an affirmative vote of the majority of its members.See § 42-46-4(a). However, such a meeting closed to the public shall be limited to matters allowed by § 42-46-5 to be exempted from discussion at open meetings. Id. The language of § 42-46-5 relevant to the matter at hand reads as follows:
 "(a) A public body may hold a meeting closed to the public pursuant to § 42-46-4 for one or more of the following purposes: *Page 14 
 * * *
 (2) Sessions pertaining to collective bargaining or litigation, or work sessions pertaining to collective bargaining or litigation."
Here, in determining the scope of § 42-46-5 in regard to sessions "pertaining to" litigation, the Court applies the customary rules of statutory construction.
It is well established that "when the language of a statute is clear and unambiguous, [this Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Liberty Mutual Insurance Co. v. Kaya,947 A.2d 869, 872 (R.I. 2008) (quoting State v. LaRoche,925 A.2d 885, 887 (R.I. 2007). Hence, when "a statutory provision is unambiguous, there is no room for statutory construction and [the Court] must apply the statute as written." Retirement Bd. ofEmployees' Retirement System of State v. DiPrete,845 A.2d 270, 297 (R.I. 2004) (quoting In re Denisewich,643 A.2d 1194, 1197 (R.I. 1994)). "It is only when confronted with an unclear or ambiguous statutory provision that this Court will examine the statute in its entirety to discern the legislative intent and purpose behind the provision." Liberty Mutual Ins.Co., 974 A.2d at 872 (quoting LaRoche, 925 A.2d at 888).
In interpreting a legislative enactment, it is incumbent upon the Court "to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." Downey v. Carcieri,996 A.2d 1144, 1150 (R.I. 2010) (quoting Brennan v. Kirby,529 A.2d 633, 637 (R.I. 1987)). In so doing, "[t]his Court will not construe a statute to reach an absurd result." Id. (quotingKaya v. Partington, 681 A.2d 256, 261 (R.I. 1996)). Furthermore, an *Page 15 
ambiguous statute should not be interpreted in a manner that will defeat its underlying purpose. See Town of Burrillville v.Pascoag Apartment Associates, LLC.,950 A.2d 435, 446 (R.I. 2008).
Here, Plaintiffs contend the plain meaning of § 42-46-5(a)(2) limits executive session discussions to those concerning actual litigation only, and that the provision on its face does not provide for discussions relating to "threatened" or "anticipated" litigation, or even legal advice generally. The Committee contends otherwise. The Rhode Island Supreme Court has oft consulted the Black's Law Dictionary in matters of statutory construction, see e.g. Berman v. Sitrin,991 A.2d 1038 (R.I. 2010) ("discovery," "willful" and "guard");Downey, 996 A.2d at 1152 ("heretofore"), and so too will this Court look to this source for guidance. Black's Law Dictionary defines "pertain" as "to relate to; to concern."Black's Law Dictionary 1260 (9th ed. 2009). The same authority defines "litigation" as "the process of carrying on a lawsuit" and "a lawsuit itself." Id. at 1017. Examining the exemption set forth in § 42-46-5(a)(2) in light of these ordinary meanings, this Court finds that the language at issue is reasonably susceptible of more than one interpretation, thus rendering the provision ambiguous. See W.P. Assocs. v. Forcier, Inc.,637 A.2d 353, 356 (R.I. 1994) (defining an ambiguous term as one which is reasonably susceptible to more than one interpretation). While the language "work session pertaining to litigation" may be read as having a limiting effect, restricting such discussions to those concerning solely actual or pending litigation, the phrase could equally be read in a much broader sense.
As noted above, "[w]hen construing a statute `[the Court's] ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" Oliveira v. *Page 16 Lombardi, 794 A.2d 453, 457 (R.I. 2002) (quotingWebster v. Perrotta, 774 A.2d 68, 75 (R.I. 2001)). In interpreting an ambiguous statutory provision, the Court must ascertain the Legislature's intention "by considering the entire statute, keeping in mind its nature, object, language and arrangement." Arnold v. R.I. DOL Training Bd. of Review,822 A.2d 164, 168 (R.I. 2003) (internal quotations omitted). As acknowledged by the Rhode Island Supreme Court in Tanner,
 [t]he explicit purpose of the OMA that "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy," § 42-46-1, clearly demonstrates the Legislature's intent that citizens be given a greater opportunity to become fully informed on issues of public importance so that meaningful participation in the decision-making process may be achieved. 880 A.2d at 796.
This policy clearly "establishes the right of the public to be fully informed about the conduct of government business." B. Mitchell Simpson, The Open Meetings Law: Friend and Foe, 45 Rhode Island Bar Journal 7 (Oct. 1996). Moreover, the articulated public policy of the OMA "itself betokens that two salient First Amendment values — the public's right to know and the accountability of public institutions — are at the core of the Act."Belcher v. Mansi, 569 F.Supp. 379, 382 (D.C.R.I. 1983).
Countering this acknowledged policy is the sanctity of the attorney-client relationship and its accompanying privileges. Undeniably, it would be detrimental to a public body to discuss trial strategy and settlement proposals in the presence of a litigating opponent. As noted by the Minnesota Supreme Court, "a basic understanding of the adversary system indicates that certain phases of litigation strategy may be impaired if every discussion [by a public body] is available for the benefit of opposing parties who may have as a purpose a private gain in contravention to the public need. . ." *Page 17 Minneapolis Star Tribune Co. et al v. Housing and RedevelopmentAuthority et al,310 Minn. 313, 323, 251 N.W.2d 620, 625 (1976) (examining the interplay between Minnesota's Open Meeting Law and the state's general statutory attorney-client privilege prior to statutory amendment creating an attorney-client privilege exception to open meeting requirements). Indeed, "[p]ublic agencies face the same hard realities as other civil litigants. An attorney who cannot confer with his client outside his opponent's presence may be under insurmountable handicaps." Sacramento Newspaper Guild v.Sacramento County Bd. of Supervisors,255 Cal.App.2d 51, 53, 62 Cal.Rptr. 819, 821 (1967).
In construing the scope of the litigation exception under § 42-46-5(a)(2) in light of these two competing public policies, the Committee urges this Court to place heavy reliance on prior opinions rendered by the Attorney General, including the opinion issued in connection with the instant matter. While such advisory opinions may be instructive, they may not be entitled to deference by this Court. See Tanner,880 A.2d at 798-99 ("In light of our conclusion that the notice in this case did not fairly inform the public . . ., we need not consider what, if any, deference the advisory opinions of the Attorney General are entitled to receive"); see alsoOhs v. North Kingstown School Committee, No. WC-441, 2005 WL 2033074 (R.I. Super. Ct. Aug. 10, 2005) (Attorney General advisory opinion may be instructive but, underTanner, may not be entitled to deference by this Court). However, given the frequency with which the Attorney General has encountered complaints premised on misuse of the litigation exception, the findings of the Department shall not be wholly disregarded. *Page 18 
On multiple occasions, the Attorney General has investigated complaints of improper executive sessions purportedly convened pursuant to the OMA's exemption for discussion pertaining to litigation. Specifically, the Attorney General has determined that the OMA permits closed session discussions not only to confer about litigation currently pending, but also where litigation is "threatened", see Wardwell v. Narragansett School Committee, OM 97-15 (July 8, 1997), or "reasonably anticipated [requiring] substantive discussion of strategy. . ." Greig v. Jamestown TownCouncil, OM 97-06 (Mar. 18, 1997). In addition to these findings, the Attorney General has upheld the propriety of closed sessions pertaining to "discussions of imminent litigation and strategy to avoid and/or defend such litigation," see Berube v. Coventry TownCouncil, OM 96-33 (Nov. 13, 1996), andMello v. East Providence School Committee, OM 07-15 (July 20, 2007) ("imminent potential litigation"), as well as sessions closed upon a public body's reasonable belief of a "threat of imminent litigation." Trafford v. Coventry TownCouncil, OM 97-19 (Nov. 7, 1997); see also Cole andBoeniger v. Westerly Town Council, OM 99-18 (Aug. 19, 1999) (public body reasonably anticipated threat of imminent litigation, received frank appraisals from counsel, and discussed strategy);Pallasch v. Town of Tiverton, OM 04-23 (reliance on exception appropriate when public body receives frank appraisals from its attorney related to a litigation or threatened litigation matter).
In extending the scope of the litigation exception to "threatened," "imminent" and "reasonably anticipated" litigation, the Attorney General has reasoned that discussion of legal strategy with counsel often occurs, at least initially, "before a situation has moved into `a court of law,' and in some cases, may make recourse to the courts unnecessary." *Page 19 DelPonte v. Johnston School Committee, OM 06-15 (Feb. 6, 2006). Moreover, the Attorney General has emphasized the importance of examining the "specific facts" of each particular case, and has noted that while "almost any matter could relate to litigation," such is not the test utilized by the Attorney General in investigating potential misuse of the litigation exception. Scituate Democratic Town Committee v. Scituate TownCouncil, OM 08-50 (Nov. 26, 2008) (emphasis in original).[10]
Importantly, the Attorney General has noted that because virtually any action or decision by a public body or official could result in litigation, the OMA "cannot be read so broadly as to permit closed session discussions any time a public [body] asserts that litigation might ensue." Berube, OM 96-33 (citing Claude v.Collins, 518 N.W.2d 836 (Minn. 1994); State v. Town of TurtleLake, 508 N.W. 2d 603 (Wis. 1993); Wexford CountyProsecuting Attorney v. Pranger, 268 N.W. 2d 344 (Mich. 1978)). Additionally, the Attorney General has stated that the OMA does not permit closed session discussion of "legal matters" or "legal ramifications," but only of "litigation." Id.
Mindful of the didactical nature of the above-cited advisory opinions, as well as the uncharted status of the issue at hand within our State's jurisprudence, this Court turns to the analyses of other jurisdictions to aid in the determination of our General Assembly's intended scope of the OMA's litigation exception. Admittedly, open meeting laws differ amongst jurisdictions. In some states, there exists no express statutory exception permitting a public body to meet privately with its attorney. The majority of courts in those states have fashioned an exception to their state's open *Page 20 
meeting laws to permit private attorney-client consultation on pending legal matters even where the statute itself makes no such express exception.[11] In certain state statutory schemes, an exception for prospective or imminent litigation is expressly provided. See e.g. 5 Ill. Comp. Stat. 120/2(c)(11) (exception provided for "litigation, when an action against, affecting or on behalf of the particular public body has been filed and is pending before a court or administrative tribunal, or when the public body finds that an action is probable or imminent. . ."); N.J. Stat. Ann. § 10:4-12(b)(7) (exception provided for "any pending or anticipated litigation. . ."). Other statutes, like Rhode Island's, utilize the term "litigation" without qualification. Across the nation, several courts have addressed whether and under what circumstances an exception for "litigation" may apply permitting meetings of public bodies to be closed based on assertions that the subject matter discussed concerned pending or prospective litigation involving the public body.[12] Likewise, some courts have considered whether and under what circumstances an exception may apply allowing meetings of public bodies to be closed based on claims that the subject matter concerned privileged discussions between the public body and its attorney.[13]
Both Plaintiffs and the Committee cite to decisions generated in our neighboring state of Massachusetts in support of the Parties' respective contentions as to the scope of the OMA's exemption for discussions pertaining to litigation. Massachusetts has enacted an open meetings law that likewise includes an exemption for litigation. See
Mass. Gen. Laws Ann. ch. 30A, §§ 18-25.[14] *Page 21 
Specifically, the exemption allows for closed sessions to "discuss strategy with respect to collective bargaining or litigation if an open meeting may have a detrimental effect on the bargaining or litigating position of the public body. . ." Mass. Gen. Laws Ann. ch. 30A § 21(a)(3). In assessing the validity of an executive session convened pursuant to this statutory exception, the Supreme Judicial Court has upheld a closed session based on an anticipated court challenge. See Doherty v.School Committee of Boston,436 N.E.2d 1223, 386 Mass. 643 (1982) (School committee, already involved in extensive litigation, properly convened executive session to discuss anticipated related litigation and litigation strategy);[15] see also District Atty. for PlymouthDist. v. Board of Selectmen of Middleborough,395 Mass. 629, 481 N.E.2d 1128 (1985) (recognizing that statutory open meetings law embodies an exception for both active and threatened litigation).[16]
Other courts have also extended statutory and judicially-created litigation exemptions from open meetings requirements to matters involving threatened or anticipated litigation. See e.g. FloydCounty Bd. of Educ. v. Ratliff, 955 S.W.2d 921 (Ky. 1997) (where Supreme Court of Kentucky held statutory exception for "pending litigation" provides that the litigation in question need not be currently pending and may be merely threatened; however, the exception should not be construed to apply any time the public agency has its attorney present or where the possibility of litigation is still *Page 22 
remote); Board of Educ. of Town of Ridgefield v. Freedom ofInformation Com'n, 217 Conn. 153, 585 A.2d 82 (1991) (where Supreme Court of Connecticut declined the defendant's invitation to construe statutory exception for "pending claims and litigation" to encompass only those claims presently in litigation or pending before some other adjudicatory body); Sutter Sensible Planning,Inc. v. Board of Supervisors of Sutter County,122 Cal.App.3d 813, 176 Cal.Rptr. 342 (1981) (where the California Court of Appeals extended a judicially crafted exception to the state's open meetings law from meetings regarding actual pending litigation to meetings concerning the threat of a specific lawsuit). Generally, these courts reason that limiting such an exemption to solely active litigation would deprive public agencies of the ability to formulate in private a response to the threat of imminent legal action until that action has commenced in court, thereby placing public agencies at a serious disadvantage. In extending the scope of such litigation exceptions, however, these courts recognize that conceivably almost all public business could be considered to be related to litigation in some way, and thus the exception would swallow the rule. Consequently, these courts mandate that the exception be construed narrowly on a case-by-case basis so as to avoid improper or unauthorized closed, executive or secret meetings.
Here, in order to effectuate the legislative intent regarding the OMA, this Court recognizes that the statute should be broadly interpreted and its exemptions strictly construed. 3A Norman J. Singer, Sutherland StatutoryConstruction § 73:10 (6th ed.) (addressing statutes regulating conduct of public affairs). Though mindful of this duty to narrowly construe such exemptions to open meetings requirements, this Court is also cognizant of the significant influence exerted by public policy considerations in the *Page 23 
process of judicial statutory interpretation. See 2B Norman J. Singer, Sutherland StatutoryConstruction § 56:1 (7th ed.). Moreover, this Court acknowledges that similar statutes of other states comprise a type of extrinsic aid deserving of interpretive relevance. Seeid. at § 52:1.
Utilizing these well-settled principles of statutory construction, this Court finds that in light of the competing policy considerations here at issue, the language and nature of the OMA, and the judicial interpretation and application of similar exceptions in other jurisdictions, the exemption for discussions pertaining to litigation set forth in § 42-46-5(a)(2) encompasses work sessions concerning threatened litigation or imminent litigation that is reasonably anticipated by the public body. This Court recognizes that a public body, as a civil litigant, has a compelling need to conduct discussions concerning litigation strategy behind closed doors. Public bodies are equally entitled to receive forthright appraisals from counsel in regard to active, threatened, or imminent litigation.
Naturally, this does not mean that consultations by a public body with an attorney in private may be used as "a device to thwart the liberal implementation of the policy that the decision-making process is to be open and that confidentiality is to be strictly limited." People ex rel. Hopf v. Barger,30 Ill.App.3d 525, 332 N.E.2d 649 (1975). Indeed, this Court declines to infer a general attorney-client privilege exception to the open meetings requirements of the OMA where none explicitly exists.[17] Here, the OMA is silent as to a public body's ability to convene an executive session based solely on the *Page 24 
invocation of the attorney-client privilege. Within the OMA, the General Assembly has enumerated ten exceptions to its proscription against private meetings of public bodies, including an exemption for discussion pertaining to litigation. Generally, "exceptions are not to be implied. Where there is an express exception, it comprises the only limitation on the operation of the statute and no other exceptions will be implied." 2A Singer, Sutherland StatutoryConstruction § 47:11 (7th ed.); see also District Attorney forthe Plymouth District,395 Mass. at 633, 481 N.E.2d at 1131 (declining to create exception to open meeting law for private meeting of board of selectmen with its attorney to discuss negotiation of contract for rubbish disposal). The creation of exceptions to statutory open meetings law is within the province of the Legislature and not the courts. While this Court recognizes the potential for an unintended "chilling" effect on communications between a public body and its attorney, such is a consequence the General Assembly is equipped to address.
 2 The Letter as a "Threat" of Litigation
Having determined that the OMA's litigation exception exempts discussions pertaining to threatened or imminent litigation reasonably anticipated by the public body, this Court must address the Parties' respective contentions that they are entitled to summary judgment on Count I of the Amended Complaint. Plaintiffs maintain that no genuine issue of material fact exists as to the impropriety of the Executive Session since no draft policy was presented or adopted at the time the closed session was convened. Thus, Plaintiffs contend that the Letter could not have constituted a threat of litigation *Page 25 
since litigation was not yet possible. Plaintiffs also argue that no language in the Letter could be characterized as a threat by the RIACLU to file suit. Consequently, Plaintiffs aver that any discussion concerning the Breathalyzer policy involved the legality and underlying merits of such a policy.
On the contrary, the Committee contends that the reasonableness of its characterization of the Letter as a threat of litigation is immaterial to the Court's analysis. Essentially, the Committee maintains that even if its assessment of the Letter was objectively unreasonable, the scope of the Executive Session discussion concerned the Committee's subjectively perceived threat of litigation, thus falling squarely within the litigation exception.
This Court rejects the Committee's contention that the reasonableness of its belief is irrelevant when assessing whether litigation is threatened or imminent for purposes of convening a closed session. Aside from the fact that the Committee offers no authority to support this contention, this Court is troubled by the potential abusive effect that such a determination may enable in light of the purpose of the OMA. Permitting a public body to make solely subjective assessments free from any objective check eviscerates this Court's determination that litigation considered imminent must be "reasonably anticipated" by the public body, and severely increases the risk that the litigation exception will be exploited by public bodies beyond its intended scope. Moreover, such a subjective view may enable a public body to convene executive sessions purely to discuss legal ramifications of a policy.
Other jurisdictions have recognized and addressed these exact concerns. For example, in a New York appellate case where a town's attorney believed that a certain *Page 26 
decision involving termination of post-retirement health insurance benefits "would almost certainly lead to litigation," the court held that such a belief did not justify the conducting of this public business in an executive session. Weatherwax v. Town ofStony Point, 97 A.D.2d 840, 468 N.Y.S.2d 914 (1983).[18] TheWeatherwax court reasoned that to hold otherwise would be to accept the view that any public body could bar the public from its meetings simply by expressing the fear that litigation may result from actions taken therein.Id. at 841, 468 N.Y.S.2d at 916. Similarly, in ChemicalIndustry Council of Delaware, Inc. v. State Coastal ZoneIndus., No. 1216-K, 1994 WL 274295 (Del.Ch. 1994), the Court of Chancery of Delaware cautioned that allowing public bodies to convene executive sessions to formulate regulations that would be legally defensible runs counter to the mandate of open meeting laws, which is to provide citizens "an opportunity to observe and monitor public officials in their formulation of public policy."
However, this Court also recognizes that a public body's substantive and discretionary characterization of a particular matter or communication as posing a "threat of litigation" is entitled to some deference. Municipal bodies, such as zoning boards and school committees, are presumed to have knowledge and expertise as to matters related to the administration of the public body's governing statutes and the facilitation of the public body's obligations and duties. See Pawtucket Transfer Operations, LLC v.City of Pawtucket, 944 A.2d 855, 859 (2008); 3 Sandra M. Stevenson, Antieau on Local Government Law § 46.07[1] (2d ed. 2010). School authorities in particular are generally conferred extensive discretionary powers to "better assist in carrying out the general *Page 27 
school system adopted by [a] state and thus promote the cause of public free education." 16B Eugene McQuillin, MunicipalCorporations § 46.07 (3d ed. 2001). Accordingly, courts will not interfere with the exercise of this discretion absent proof of arbitrariness or gross abuse of discretion. Id.; see alsoAntieau on Local Government Law at § 46.07[1].
Such principles are embodied in the well-settled standards of review employed by the Rhode Island Superior Court when reviewing contested cases brought forth pursuant to Rhode Island's Administrative Procedures Act ("APA") and Zoning Enabling Act ("ZEA").[19] See G.L. 1956 § 42-35-1 et seq. and G.L. 1956 § 45-24-1 et seq. A court's review of a challenged agency or zoning board decision is limited on questions of fact; specifically, a trial justice may not substitute his or her judgment for that of the agency whose action is under review, even in situations in which the court might be inclined to view evidence differently and draw inferences different from those of the agency.Rhode Island Public Telecommunications Authority v. Rhode IslandState Labor, 650 A.2d 479, 485 (R.I. 1994) (citingLemoine v. Department of Mental Health, Retardation andHospitals, 113 R.I. 285, 291, 320 A.2d 611, 614-15 (1974); andBarrington School Committee v. Rhode Island State Labor RelationsBoard, 608 A.2d 1126, 1138 (R.I. 1992)); seealso §§ 42-35-15(g) and 45-24-69(d). Under the APA, the trial justice must uphold the agency's conclusions as to the weight of the evidence on questions of fact when such conclusions are supported by legally competent evidence on the record. Interstate NavigationCo. v. Division of Public Utilities, 824 A.2d 1282 (2003). Likewise, under the ZEA, a trial justice may not substitute his or her judgment for that of *Page 28 
the zoning board if he or she can conscientiously find that the board's decision was supported by substantial evidence in the whole record. Mill Realty Associates v. Crowe, 841 A.2d 668 (2004). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Pawtucket Transfer Operations, LLC,944 A.2d at 859 (quoting Caswell v. George ShermanSand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou v. Genovesi,120 R.I. 501, 508, 388 A.2d 821, 824-25 (1978))). Thus, a reviewing court will not set aside an agency's or board's decision, based on some evidence, unless it is clearly arbitrary and unreasonable, or characterized by abuse of discretion. Hall v. Zoning Bd. ofReview of City of Pawtucket,93 R.I. 65, 170 A.2d 912 (1961).[20]
Though mindful that allegations that a party violated the OMA are considered by the trial court on a de novo review, this Court finds that a public body's decision to close a meeting based on the subjective determination of threatened or reasonably anticipated litigation is a substantive fact-intensive deduction more analogous to agency and board decisions reviewed by this Court under the APA's and ZEA's deferential standards. Such a fact-based decision, underlying the potential procedural violation, is entitled to deference by a reviewing trial court. Here, the Committee, with assistance of counsel, is presumed to have knowledge and expertise in discerning valid threats of litigation based on the existing factual circumstances. Therefore, this Court will not disturb the determination of the Committee to close the February Meeting based on a perceived *Page 29 
threat of litigation if the record contains substantial evidence supporting this decision. As noted above, "substantial evidence" means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and denotes an amount more than a scintilla but less than a preponderance. See Pawtucket TransferOperations, LLC, 944 A.2d at 859.
Here, the Court has considered the evidence before it; namely, the Letter and the Affidavit of Superintendent McIntyre, as well as the Executive Session Minutes, which have been reviewed incamera by this Court. While this Court does not find the Letter alone to constitute relevant evidence that a reasonable mind might accept as adequate to perceive a threat of litigation, the Court does find that the Letter — considered in conjunction with evidence revealed in the Executive Session Minutes — amounts to substantial evidence upon which the reasonableness of the Committee's determination may be supported. This Court is satisfied that the Committee's decision to convene the Executive Session was neither arbitrary, unreasonable, nor characterized by an abuse of discretion. Accordingly, this Court finds the Committee properly convened the February 26, 2009 Executive Session pursuant to the OMA's litigation exception expressed in § 42-46-5(a)(2) as a matter of law.
Finding no violation of the OMA based on the allegations set forth in Count I of Plaintiffs' Amended Complaint, this Court grants summary judgment in favor of the Committee as to the propriety of the February 26, 2009 Executive Session. Plaintiffs' motion for summary judgment as to the same is denied accordingly. *Page 30 
 B Sufficiency of the February 26, 2009 Public Notice as to the Executive Session
Count II of Plaintiffs' Amended Complaint alleges that the Committee's notice provided in the February 26, 2009 agenda regarding the Executive Session failed to satisfy the public notice provisions set forth in § 42-46-6. Specifically, Plaintiffs allege that the general recital of the statement "Executive Session pursuant to . . . 42-46-5(a)(2) for . . . Litigation" failed to adequately provide public notice regarding the nature of the business to be discussed. (Am. Compl. ¶ 63; Am. Compl. Ex. C: Feb. 26, 2009 Agenda) Plaintiffs contend that such notice under the circumstances was insufficient pursuant to the language of the OMA and the case law interpreting it, constituting a violation of the applicable requirements as a matter of law. Thus, Plaintiffs contend they are entitled to summary judgment in their favor on Count II of the Amended Complaint.
In its own motion for summary judgment, the Committee maintains that the notice supplied concerning the Executive Session was sufficient to satisfy the pertinent statutory requisites as a matter of law. The Committee argues that because the litigation allegedly threatened by the RIACLU was not yet public, the Committee was entitled to limit its open call to that of "litigation." The Committee seeks summary judgment on Count II in its favor, accordingly.
The OMA requires that "[a]ll public bodies shall give written notice of their regularly scheduled meetings at the beginning of each calendar year," § 42-46-6(a), and "supplemental written public notice of any meeting within a minimum of forty-eight (48) hours before the date." Sec. 42-46-6(b). "This [supplemental] notice shall include the date the notice was posted, the date, time and place of the meeting, and a statement *Page 31 
specifying the nature of the business to be discussed."Id. At issue here is whether the supplemental notice concerning the February 26, 2009 Executive Session included a sufficient "statement specifying the nature of the business to be discussed." The OMA does not explicitly specify or delineate the exact requirements of this "statement." Tanner,880 A.2d at 796.
The Rhode Island Supreme Court previously construed the language of § 42-46-6(b) in Tanner, finding that "the Legislature intended to establish a flexible standard aimed at providing fair notice to the public under the circumstances . . ." Id. Based on this determined legislative intent, the Tanner court held that
 "the requirement that a public body provide supplemental notice, including a `statement specifying the nature of the business to be discussed,' obligates that public body to provide fair notice to the public under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public of the nature of the business to be discussed or acted upon." Id. at 797.[21]
In so holding, the Tanner court recognized that such a standard is "somewhat flexible" and declined "to provide specific guidelines or `magic words,' as such an approach accounts for the range and assortment of meetings, votes, and actions covered under the OMA, and the realities of local government, while also safeguarding the public's interest in knowing and observing the workings of its governmental bodies." Id. The Court further noted that "misleading" notice never can comply with the statutory purpose of the OMA. Id. at 798 n. 16. *Page 32 
Subsequent to Tanner, the Rhode Island Superior Court had the occasion to apply the holding set forth by our State High Court. In Ohs v. North Kingstown School Committee, the Court considered a plaintiff's allegation that public notice of a School Committee meeting violated § 42-46-6, as it did not fairly apprise the public that the issues of school closure and consolidation would be discussed, and the issue of closure of an elementary school voted upon, at that meeting. 2005 WL 2033074 (R.I. Super. Ct. Aug. 10, 2005). Based on "the totality of circumstances," the Ohs court found that the School Committee failed to give notice to the public of its meeting "as would fairly inform the public of the nature of the business to be discussed or acted upon." The court cautioned public bodies, and advised that "[i]n giving notice to the public under the Open Meetings Act, a public official should not ask `what is the minimal amount of notice I can get away with?' but `what is the best notice I can give to fairly inform the public of the workings of its government?'" Id. at *22.
This Court is mindful that in certain circumstances involving notice of closed sessions convened pursuant to the litigation exception, a specific statement on an agenda identifying the litigation or the litigants would tend to trounce the very confidentiality that the exemption safeguards. This concern was specifically addressed by the Attorney General in Graziano v. RILottery Comm'n, OM 99-06 (Apr. 14, 1999). The Attorney General — whose opinions this Court again emphasizes may not be entitled to deference under Tanner — recognized that the OMA requires a public body to enunciate in its open call a separate statement for each of the matters to be discussed in executive session. The Attorney General further opined that
 "[i]f the matter to be discussed is one of public record, such as a pending court case or the well publicized negotiation of a principal or executive *Page 33 
director's contract, the public body should cite the name of the case or reference that it will discuss the contract. However, where the matter to be discussed in executive session is not yet public, the public body may limit its open call to the nature of the matter, such as "litigation" or "personnel."
More recently, in Scituate Democratic Town Committee v. ScituateTown Council, OM 08-50 (Nov. 26, 2008), the complainant challenged the adequacy of a Town Council agenda item listing a closed session "pertaining to litigation, strategy, options and substantive legal issues." In its opinion, the Attorney General determined the notice to be adequate because "the matter was not yet public," citing both Tanner and its advisory opinion inGraziano in support of its findings.
Here, the Committee contends that "the matter before the Committee was not yet public because the ACLU had not actually filed its threatened lawsuit." (Def's Mem. p. 20.) However, this Court will not limit the connotation of "public" to solely filed litigation. Here, it is undisputed that the matter at issue — the proposed Breathalyzer policy — had already permeated the public domain prior to the planned Executive Session. In December of 2008, the Chief of Police publicly advocated the policy. Multiple newspapers published articles concerning the controversy throughout January of 2009. The RIACLU issued a press release regarding its Letter and position expressed therein. The record also reflects that certain parents of students had compiled a petition urging the Committee to reject any proposed mandatory Breathalyzer policy. Moreover, the matter was addressed at the January 29, 2009 Committee meeting, after which the Committee set down a public comment period as to the proposed policy for the February Meeting.
Given the totality of the circumstances, this Court finds that the Committee's supplemental notice regarding the February 26, 2009 Executive Session did not fairly *Page 34 
inform the public of the nature of the business to be discussed or acted upon in accordance with the standard forth inTanner. The Committee has failed to show how it would have been unfairly disadvantaged by providing the public — who was very well aware of the discord surrounding the proposed policy — with more specific notice, such as "Litigation — Threatened Litigation as to Breathalyzer Policy" or even simply "Litigation — Breathalyzer Policy." Under these circumstances, the Committee fell short of providing the best notice it could give to fairly inform the public of the workings of its government. See Ohs, 2005 WL 2033074 at *22. Accordingly, based on the undisputed facts before it, this Court finds that the Committee violated the notice provisions of the OMA by providing insufficient notice to the public regarding the Executive Session listed on its February 26, 2009 Meeting Agenda.
The OMA grants prevailing parties the right to recover reasonable attorney's fees and costs, "except where special circumstances would render such an award unjust."See § 42-46-8(d). The court may also issue injunctive relief and declare null and void any actions of a public body found to be in violation of the OMA. Additionally, the court, in its discretion, may impose a civil fine of up to $5000 against a "public body or any of its members" upon the finding of a "willful or knowing violation" of the OMA. Id. When a remedy is selected, it must be proportional to the breach of the OMA and the effect thereof.Edwards v. State Through Atty. Gen.,677 A.2d 1347 (R.I. 1996). Here, the question of remedy, and a determination as to willfulness if required, shall be reserved for evidentiary hearing. Thus, summary judgment in favor of Plaintiffs as to the sole issue of violation is granted as to Count II of the Amended Complaint, with remedy to be *Page 35 
subsequently determined upon further hearing. The Committee's motion for summary judgment as to Count II is denied.
 C Adequacy of Supplemental Written Notice in Agendas
Lastly, Plaintiffs allege that the Committee's published agendas routinely fail to provide sufficient public notice in accordance with notice provisions of § 42-46-6. (Am. Compl. ¶¶ 67-68.) As a preliminary matter, the Court notes that Plaintiffs have attached a "sample" of agendas and meeting minutes to the Amended Complaint in support of this general contention.[22] This Court will review only these submitted materials and will refrain from making a determination as to the Committee's general practice or routine. In addition, the Court need not consider the sample agendas of other school committees, appended as Exhibit H to the Amended Complaint, in its analysis.
Aside from alleged notice violations particular to certain agendas, the Plaintiffs' primary concern involves the Committee's repeated and consistent utilization of the agenda item "Discussion School Committee Policies" without further specification. Plaintiffs describe this language as "boilerplate," "cookie-cutter" and insufficient given the multitude of school department policies that could fall within this topic. (Pls. Mem. p. 27.) Thus, Plaintiffs contend that the Committee's published meeting agendas fail to comply with the notice provisions of the OMA as a matter of law and seek summary judgment in their favor on Count III accordingly. *Page 36 
The Committee contends otherwise, maintaining that the published meeting agendas fairly inform the public of the nature of the business to be discussed in conformity with the requirements set forth in the OMA. The Committee urges this Court to adhere to the "flexible" standard set forth in Tanner in considering the totality of the circumstances at hand. Specifically, the Committee points to the range and unpredictability of school department policy discussions, alleged hazards of providing notice that is overly narrow, and practicality arguments, such as the cost of publishing. The Committee asserts that no genuine issues of material fact exist as to whether the published meeting agendas complied with the statutory mandates of the OMA and request that Count III be summarily decided in its favor.
As discussed in the Court's analysis regarding Count II of the Amended Complaint, this Court's inquiry when presented with alleged violations of § 42-46-6 is guided by the Rhode Island Supreme Court's decision in Tanner. 880 A.2d 784 (2005). Though mindful of the practical considerations for which a public body must account when developing a meeting agenda, an examination of the totality of the evidence and circumstances before the Court demonstrates that the Committee's agendas fail to satisfy the standard set forth in Tanner, and perhaps more significantly, patently disregard the spirit and purpose of the OMA. For example, the March 19, 2009 meeting Minutes reflect that "discussion regarding School Committee policies be tabled until the next meeting" to facilitate review and discussion concerning a draft "Fund Balance" policy. These Minutes also indicate that "a policy dealing with surveys and food allergies will also be discussed at the next meeting." Despite knowing that these specific School Committee Polices would be discussed at the next meeting, the April 2, 2009 meeting *Page 37 
agenda listed only "Discussion School Committee Polices" as an item under "Old Business" without further specification. Indeed, the April 2, 2009 meeting Minutes reveal that the "Fund Balance Policy," the "Survey Policy" and the "Food Allergy Policy" were all discussed.
The April 23, 2009 meeting agenda also displays the Committee's disregard of the public's statutorily-protected right to be advised of the workings of its governmental bodies through appropriate notice. Again, this particular agenda lists "Discussion School Committee Policies" as an item under "Old Business." However, the associated Minutes indicate "two School Committee policies being presented for second readings." These two policies — the "Fund Balance Policy" and the "Food Allergies Policy" — were not new topics and had been discussed in the meetings prior. Yet the Committee failed to provide the public with notice of these topics, despite possessing the foresight and ability to effectuate better notice. These agendas fall intolerably short of providing fair notice of the "nature" of the business to be discussed under the circumstances.
Perhaps the most disconcerting violation discerned by this Court occurs in connection with the agenda for the June 18, 2009 meeting, at which the Committee voted to "support" the updated procedure for Breathalyzer testing submitted as a proposal at that very meeting, contingent upon feedback and approval from legal counsel. Absent from this agenda is any indication that the draft Breathalyzer protocol was to be presented and voted upon. While there is nothing in the OMA that requires a public body to identify on its notice that it intends to vote on a particular issue, see § 42-46-6(b), the Committee was obliged to inform the public that this particular subject matter was to be *Page 38 
discussed in light of its controversial nature and attention by the Committee and the public over the preceding months.[23]
Though mindful of the flexible standard enunciated inTanner, as well as the range and assortment of meetings, votes, and actions covered under the OMA, this Court is constrained to find that the Committee's notice in the submitted agendas falls outside the extent to which this standard may be stretched. The record clearly indicates that on multiple occasions the Committee had knowledge of topics planned for meetings, yet failed to specify the nature of these topics in its agendas. While the notice provided by the Committee did not rise to the level of "misleading," it undoubtedly failed to provide fair notice given the circumstances. Therefore, this Court finds that the agendas submitted in connection with Count III of the Amended Complaint fail to comply with the statutory notice requirements set forth in § 42-46-6 as a matter of law. Summary judgment as to the statutory violation issue is rendered in favor of Plaintiffs, and denied as to the Committee's motion accordingly. However, as noted above, the question of remedy, and a determination as to willfulness if required, shall be reserved for evidentiary hearing.
This Court urges the Committee to avoid further allegations of OMA violations by striving to meet its statutory obligations in furtherance of the purpose and spirit of the Act. *Page 39 
 IV Conclusion
For the above reasons, this Court grants the Committee's motion and denies the Plaintiffs' motion for summary judgment as to Count I. This Court grants summary judgment in favor of Plaintiffs on Counts II and III as to the determinations of statutory violations only. The Committee's motion is denied as to the same. The remaining issues as indicated in this Decision shall be determined upon further evidentiary hearing. Counsel shall submit an appropriate order for entry.
[1] Defendants James Hasenfus, Robert E. Shea, Jr., Patrick Guida, Thomas R. Flanagan and Amy Page Oberg are named in their official capacities as members of the Barrington School Committee and also move for summary judgment in this matter.
[2] At the time, the existing school policy permitted the Breathalyzer testing of a student attending a high school dance only upon reasonable suspicion that the student was impaired by alcohol. (Joint Statement ¶ 4.)
[3] At the time, Mr. Bickford was the editor of The BarringtonTimes.
[4] Sections 38-2-2(4)(i)(E) and (S) deem the following records as not public: "[a]ny records which would not be available by law or rule of court to an opposing party in litigation" and "[r]ecords, reports, opinions, information, and statements required to be kept confidential by federal law or regulation or state law, or rule of court."
[5] Section 38-2-8 confers upon the Attorney General the authority to investigate and determine the validity of a complaint made under the Access to Public Records Act and reads in pertinent part as follows:
 (b) If the chief administrative officer determines that the record is not subject to public inspection, the person or entity seeking disclosure may file a complaint with the attorney general. The attorney general shall investigate the complaint and if the attorney general shall determine that the allegations of the complaint are meritorious, he or she may institute proceedings for injunctive or declaratory relief on behalf of the complainant in the superior court of the county where the record is maintained.
[6] Section 42-46-8 confers upon the Attorney General the authority to investigate and determine the validity of a complaint made under the Open Meetings Act and reads in pertinent part as follows:
 (a) Any citizen or entity of the state who is aggrieved as a result of violations of the provisions of this chapter may file a complaint with the attorney general. The attorney general shall investigate the complaint and if the attorney general determines that the allegations of the complaint are meritorious he or she may file a complaint on behalf of the complainant in the superior court against the public body.
[7] In its decision, the Attorney General cites in support of its interpretation its prior opinions in Greig v. Jamestown TownCouncil; Jamestown Board of Water Sewer Assessment, No. OM97-06 (Mar. 18, 1997); Wardwell v. NarragansettSchool Committee, No. OM97-15 (July 8, 1997); Trafford v.Coventry Town Council, No. OM97-19 (Nov. 7, 1997);Cole et al v. Westerly Town Council, No. OM99-18 (Aug. 19, 1999); Providence RetiredPolice Firefighters Association v. Board of InvestmentCommissioners, No. OM00-21 (Sept. 22, 2000); and ScituateDemocratic Town Committee v. Scituate Town Council, No. OM08-50 (Nov. 26, 2008).
[8] Plaintiffs' original Complaint comprised of Counts I and II; however, Plaintiffs subsequently filed an Amended Complaint on August 26, 2009 to include Counts III and IV.
[9] The pertinent section of the OMA utilizes the language "pertaining to collective bargaining or litigation." Sec. 42-46-5(a)(2).
[10] In Scituate Democratic Town Committee, the Attorney General determined that the Town Council appropriately entered closed session to discuss a matter concerning "reasonably anticipated litigation where substantive discussions of strategy or consequences of action or inaction were necessary."
[11] For examples of jurisdictions implementing such judicially-created exemptions, see Smith County Educ. Ass'n v.Anderson, 676 S.W.2d 328, 332 (Tenn. 1984).
[12] A compilation of such cases can be located at 35 A.L.R.5th 113, titled "Pending or prospective litigation exception under state law making proceedings by public bodies open to the public."
[13] A compilation of such cases can be located at 34 A.L.R.5th 591, titled "Attorney-client exception under state law making proceedings by public bodies open to the public."
[14] At the time of briefing and hearing in this matter, Massachusetts open meetings law was set forth in Mass. Gen. Laws Ann. ch. 39 §§ 23A-C (repealed by c. 28, § 20, approved July 1, 2009 and by § 106 made effective July 1, 2010). The exemption for litigation was expressed in subsection § 23B(3) and allowed for closed sessions "to discuss strategy with respect to collective bargaining or litigation if an open meeting may have a detrimental effect on the bargaining or litigation position of the governmental body. . ." The exemption for litigation set forth in the most recently enacted statutory scheme is nearly identical. See
Mass. Gen. Laws Ann. ch. 30A, § 21(a)(3) (effective July 1, 2010).
[15] Interpreting previously enacted exemption under ch. 39 § 23B(3).
[16] Interpreting previously enacted exemption under ch. 39 § 23B(3).
[17] As noted by the United States Supreme Court, "[t]he judicial function is that of interpretation; it does not include the power of amendment under the guise of interpretation." West Coast HotelCo. v. Parrish, 300 U.S. 379, 404, 57 S.Ct. 578, 587 (1937). The Court's goal is "to construe the statute as it is written and not to divine sound public policy out of legislative silence, references to imagined legislative intentions, or our own predilections."Kaya, 681 A.2d at 267 (J. Flanders, dissenting).
[18] The statutory exemption for litigation under New York law includes "proposed, pending and current litigation."See N.Y. Public Officers Law § 105(1)(d).
[19] Courts apply the same standard of review when deciding appeals from administrative agencies and from zoning boards.Pawtucket Transfer Operations, LLC, 944 A.2d at 860 n. 4.
[20] Importantly, the policy of not disturbing a decision of a zoning board of review when the record contains evidence supporting the decision will not be applied where the decision appears to rest on incompetent or illegal evidence. Center Realty Corp. v. ZoningBd. of Review of City of Warwick,96 R.I. 482, 194 A.2d 671 (1963).
[21] In applying this standard to the factual circumstances inTanner, the Rhode Island Supreme Court determined the town council's notice of a meeting concerning applicant interviews for certain zoning and planning board positions was misleading and thus violated the OMA. The Court reasoned that the agenda item listed only the interviews for the positions, and did not inform the public that the council would vote on appointments at that meeting.
[22] Appended as Exhibit G to Plaintiffs' Amended Complaint are the agendas and associated meeting Minutes for March 19, 2009; April 2, 2009; April 23, 2009; June 18, 2009; and August 4, 2009.
[23] Ultimately, the Committee endorsed a final version of the "Alcohol Sensor Device Procedure," and voted to suspend the existing policy, at its August 4, 2009 meeting after "input from the School Committee and audience." (Am. Compl. Ex. G: 8/4/09 Meeting Minutes). The agenda for that meeting enumerated "Discussion of Breathalyzer" as an agenda item under the "Regular School Committee Meeting" heading.